**In re DEIN HOST, INC., Debtor.**

**Joseph D. PIGNATO,
Plaintiff, Appellant.**

**v.**

**DEIN HOST, INC., Defendant, Appellee.**

**No. 87–1541.**

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1987.

Decided Dec. 21, 1987.

R. Timothy Phoenix with whom Robert A. Shaines and Shaines & McEachern Professional Ass'n, Portsmouth, N.H., were on brief, for plaintiff, appellant.

Daniel W. Sklar with whom Marc W. McDonald and Sheehan, Phinney, Bass & Green, Professional Ass'n, Manchester, N.H., were on brief, for defendant, appellee.

Before BOWNES, Circuit Judge, TIMBERS,* Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

A bit of doggerel popular in colonial times, provenance unknown, went somewhat along the following lines:

The man in the wilderness asked of me,
"How many strawberries grow in the sea?"
I answered him as I thought good,
"As many as red herrings grow in the wood."

The verse springs readily to mind in connection with this appeal. What appeared at first blush to be a juridical jujube—a delicately flavored bankruptcy issue of novel impression—has faded into the unreachable distance, untasted, because appellant lacks the right to pluck it.

## I. BACKGROUND

In 1986, Dein Host, Inc. (DHI), debtor-appellee, filed a voluntary petition for a chapter 11 reorganization in the federal bankruptcy court for the District of New Hampshire. Prior thereto, the debtor was party to a lease with Aries Realty, Ltd. (Aries) whereby DHI rented the premises at which it operated a restaurant business. Holding title to the real estate and collecting the rent comprised Aries' sole business. The lease began in June 1984 and ran for some 23 years. The tenant paid all property-related expenses and a fixed monthly rental, said to be substantially below market.

DHI and Aries had more than a landlord-tenant relationship. Appellant Joseph D. Pignato was a director of both corporations. Pignato owned 49% of DHI and 50% of Aries. Marsha Jespersen was also a director and 49% shareholder of DHI, and its president. Her ally, Cecil Moulton, owned the remaining 2%. Marsha Jespersen, like appellant, was a 50% shareholder of Aries. She was also its president and a director. Her husband, Marshall, though owning no interest in the debtor, was an officer and director of that corporation, and

had been the manager of its victualling business. He was also an officer of Aries.

DHI's affairs were plagued by dissension and business reverses. The company was dealt a crippling blow in early 1986 when a fire occurred, damaging the building. The restaurant shut down and DHI stopped making monthly rental payments soon thereafter. A substantial arrearage accrued. On August 15 of that year, DHI sought the protection of the bankruptcy court. By the fall, Aries, too, was the target of an involuntary bankruptcy petition, sponsored by Marshall Jespersen, claiming to be a creditor.

On October 17, 1986, exactly sixty-two days after filing for bankruptcy and without first securing any extension of time from the court, the debtor moved for leave to assume the lease. Pignato objected, principally on the ground that the indenture had terminated by operation of law. The objection centered about section 365 of the Bankruptcy Code, and in particular, the paradigm constructed therein for a bankrupt's assumption of an unexpired nonresidential lease. See 11 U.S.C. § 365(d)(4) (Supp. III 1985). We briefly survey this legal landscape.

Section 365(a) provides in material part that, with certain limitations, "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Arguably, one of those limitations is set out in § 365(d)(4), which cautions that,

if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.[1]

The factual predicate upon which Pignato's objection rested was straightforward. DHI acknowledged that no overt act of

---

* Of the Second Circuit, sitting by designation.

**1.** Both § 365(a) and § 365(d)(4) refer to acts or omissions by a "trustee". In a chapter 11 reorganization, however, a debtor in possession (like DHI) is cloaked with the trustee's mantle. See 11 U.S.C. § 1107 (Supp. IV 1986).

affirmation had taken place within the sixty day period, and that its motion for assumption had not been docketed during that span. In seeking to resuscitate the lease, the debtor avouched that it had been "implicitly assumed" within the sixty day window by discussions between, and the subjective expectations of, Mr. and Mrs. Jespersen.[2] Debtor's position reduced to the notion that Marsha Jespersen, as president of DHI and Aries, spoke for both lessor and lessee, and that her decision to assume the lease within the sixty day period, without any external manifestation of it, was all that was required by the statute. Alternatively, the debtor claimed that Mrs. Jespersen, as the chief executive officer of Aries, could—and did—waive technical noncompliance with 11 U.S.C. § 365(d)(4).

Pignato was little impressed. He maintained before the bankruptcy court that § 365(d)(4) comprised a strict mandate requiring formal application to the court within the sixty day interval. At least, he urged, there must be some definite, overt manifestation of an intention to assume before the statutory time has lapsed. He pointed out that no contemporaneous memorandum had been prepared, no corporate meetings convened, no documents executed.

The bankruptcy court, in an *ore tenus* bench decision, granted appellee's motion. It rejected the idea that a formal motion had to be filed, and judicial action taken, within sixty days of the bankruptcy filing. From that starting point, the court reasoned that any essential notice requirement had been met because the president of the lessee informed herself, as president of the lessor, of DHI's intention so to assume within the sixty days. The implicit assumption, the bankruptcy judge thought, was

evident since Marsha Jespersen was president of both corporations. In such extraordinary circumstances, "a mere expression of intent by the debtor in possession would be sufficient," the purpose of the statute was served, and therefore no formal notification of assumption of the lease within the period was necessary. Pignato appealed the bankruptcy judge's order to the United States District Court for the District of New Hampshire, which affirmed. This appeal followed.

## II. APPELLATE STANDING

The parties have briefed and argued this case in terms of the subtle nuances of 11 U.S.C. § 365(d)(4) and the action, if any, required to animate that statute. The issues that they limn are novel and important ones. *Compare, e.g., In re Treat Fitness Center, Inc.*, 60 B.R. 878 (9th Cir. BAP 1986) (request for court approval of nonresidential lease assumption must be made within the sixty day period) *with In re Ro-An Food Enterprises, Ltd.*, 41 B.R. 416 (E.D.N.Y.1984) (so long as decision to assume has been unequivocally made and communicated as between the parties within sixty days, request for court approval may come later). *See generally In re Southwest Aircraft Services, Inc.*, 831 F.2d 848 (9th Cir.1987) (discussing meaning and purpose of § 365(d)(4) and analyzing legislative history). Yet, fascinating as the drawing of such fine lines may be, we are duty bound first to undertake a preliminary inquiry as to appellant's standing to prosecute this appeal. As has long been recognized, federal courts must satisfy themselves as to a party's standing, whether or not such an issue has been raised by any of the litigants. *See Orr v. Orr*, 440 U.S. 268, 271, 99 S.Ct. 1102, 1107, 59 L.Ed.2d 306

---

**2.** The district court found the evidence sufficient to show,

> that at the end of August or in early September of 1986, Mr. Jespersen, in his capacity as manager of Dein Host, agreed with Mrs. Jespersen, who was president, not only of the lessor, Aries, but also of the lessee, Dein Host, to assume the lease with Aries in order to formulate a proper reorganization plan. Mr. Jespersen also discussed these plans with [the mortgagee], which would receive from Aries

> the rental payments as made to Aries by Dein Host.... As the president of both lessor and lessee, Marsha Jespersen has waived any requirement of formal written documents with respect to assumption of the lease.

*In re Dein Host, Inc.*, C.A. No. 87–69–D, order at 2–3 (D.N.H. April 23, 1987) (footnotes and transcript references omitted). From a factual standpoint, these findings enjoyed adequate record support.

(1979); *Juidice v. Vail,* 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977); *Theriault v. Brennan,* 641 F.2d 28, 31 (1st Cir.1981).[3]

Earlier this year, we announced a rule of appellate standing in bankruptcy cases, *see In re El San Juan Hotel,* 809 F.2d 151, 154–55 (1st Cir.1987), which limited the right of review to "those persons whose rights or interests are 'directly and adversely affected pecuniarily' by the order or decree of the bankruptcy court." *Id.* at 154 (quoting *In re Fondiller,* 707 F.2d 441, 442–43 (9th Cir.1983)). We explained that, for a litigant to qualify under this rubric, the disputed order must "diminish[ ] his property, increase[ ] his burdens, or impair[ ] his rights." *San Juan Hotel,* 809 F.2d at 154 (footnote omitted).[4] Applying this standard to the instant proceeding, it seems plain that Pignato lacks standing to pursue the appeal.

Before plunging too deeply into the requisite analysis, it is important to note that Pignato does not and cannot object to the transaction because of any asserted interest as a creditor or beneficial owner of DHI. He tells us flatly that he presses his claim "by virtue of his status as a shareholder and director of lessor, Aries." Appellant's Brief at 5. Pignato's contention remains as phrased in his written objection to the motion for leave to assume, that perpetuation of the rental arrangement "is a detriment to Aries." The objection sets forth no factual basis why assumption of the lease would be harmful to, or not in the best interests of, DHI or its creditors; indeed, the cheap rental rate and the corresponding disadvantage to Aries would seem to make the lease's continued exist-

ence something of a bonanza for the debtor.[5] So, Pignato's objection rests strictly and solely upon his ties with Aries.

The challenged order has but a single attribute: it allows the debtor to assume the lease. Pignato claims that DHI should not be permitted to obtain this benefit. The lease, he says, has lapsed—and *Aries* will be harmed if the assumption is allowed. Assuming that to be so, the "wrong" does not affect Pignato directly; it affects *Aries.* It harms Pignato, if at all, only derivatively. It is Aries' property which is at risk, Aries' burdens which continuation of the lease threaten to make heavier, Aries' rights which are encumbered. Pignato seems not to be a "person aggrieved" by the bankruptcy court's order permitting DHI to assume the lease. And if Aries is aggrieved, that does not fill the void: *Aries* has not complained, and Pignato, acting alone and individually, has no standing to assert any corporate claim. *See Green v. Victor Talking Mach. Co.,* 24 F.2d 378, 380 (2d Cir.) (general rule is that corporation and its shareholders are distinct legal "persons"—and should be treated as such), *cert. denied,* 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928).

Appellant's rejoinder, of course, must be that his beneficial interest in Aries—his stock—is in jeopardy and subject to shrinkage by reason of the wrongly-revived lease. But even if this be so, it does not confer standing. Where the direct injury is to the corporation—and in appellant's view, Aries is the entity shortchanged in terms of rental income—it "is regarded as affecting only the corporation. The fact that the injury may indirectly harm a stockholder by diminishing the value of his corporate shares

---

**3.** Because the question of standing was not raised below, we could remand for further findings. Yet here, where "the relevant facts and necessary evidence are clearly before us and not in dispute," *In re El San Juan Hotel,* 809 F.2d 151, 154 n. 3 (1st Cir.1987), remand is not required.

**4.** We noted two modest exceptions to this general rule of appellate standing, *see El San Juan Hotel,* 809 F.2d at 155 n. 6, neither of which has any application to the case at bar.

**5.** At the hearing before the bankruptcy court, there was unrebutted testimony that the lease

comprised a valuable asset of the debtor (Marshall Jespersen estimated its worth at upwards of $200,000) and that assumption of it was vital to a successful reorganization of DHI. Therefore, even if appellant attempted belatedly to don the hat of a creditor or shareholder of DHI in order to breathe life into his objection, he could not rescue it. The court order *preserving* the lease—an admitted asset of DHI—in no way diminished the property, increased the burdens, or impaired the rights of anyone claiming by, through, or under the debtor.

does not bestow upon him a right to sue on his own behalf." *Papilsky v. Berndt,* 466 F.2d 251, 255 (2d Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972). The Third Circuit has phrased the principle as follows:

> A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.

*Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 732 (3d Cir.1970) (citations omitted), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). The Eighth Circuit has put it bluntly and well:

> Actions to enforce corporate rights or redress injuries to the corporation cannot be maintained by a stockholder in his own name ... even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock.

*Brictson v. Woodrough,* 164 F.2d 107, 109 (8th Cir.1947) (footnotes omitted), *cert. denied,* 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772 (1948). *See also Ash v. IBM,* 353 F.2d 491, 493–94 (3d Cir.1965) (harm to corporation, impairing value of one's shares, does not make stockholder a person "injured in his business or property" so as to confer standing for Clayton Act purposes), *cert. denied,* 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966).

The fact that Pignato had a substantial ownership interest in Aries does not call for departure from this doctrine. Even a *sole* shareholder acquires no personal cause of action because of an injury—real or threatened—to the corporation. *See, e.g., Green v. Victor Talking Mach. Co.,* 24 F.2d at 380. *See also Henry v. General Motors Corp.,* 236 F.Supp. 854, 856–57

(N.D.N.Y.) (principal shareholder), *aff'd,* 339 F.2d 887 (2d Cir.1964) (per curiam).

The rule is a salutary one: if a shareholder, dissatisfied with the dealings entered into between his corporation and a third party, automatically possessed a personal right of action against the third party, then corporations would be paralyzed. They could rarely act except upon unanimous consent. Business affairs would slow to a crawl, and the courts, confronted with a bewildering myriad of shareholder claims, would be as busy as a colony of centipedes with athlete's foot. Not surprisingly, the law is to the contrary. As Justice Holmes once stated, "[a] leading purpose of [the corporation code] is to interpose a nonconductor, through which in matters of contract it is impossible to see the men behind." *Donnell v. Herring-Hall-Marvin Safe Co.,* 208 U.S. 267, 273, 28 S.Ct. 288, 289, 52 L.Ed. 481 (1908). The corollary to the practical invisibility of "the men behind" is their inability unilaterally to arrogate unto themselves choses in action which belong to the firm. Thus, the prospect of economic harm to an incorporated business does not, in and of itself, "constitute[ ] justiciable personal injury to each owner of stock in the corporation." *Kauffman,* 434 F.2d at 733. And what is true of standing to sue is perforce true of appellate standing as well. On this record, Pignato had insufficient standing either to press an objection to the petition or to appeal the order validating assumption of the lease.

Nor was Aries powerless to protect its corporate interests. Pignato had sought and received permission to answer the bankruptcy petition filed against Aries. Thus, he could have requested appointment of a trustee or receiver, or taken a variety of other steps *within the confines of Aries' case* to have the proper party in interest—the lessor—challenge the validity of the lease. He elected not to take that route, but chose instead to make an end run around Aries, and to take action in his own name in the DHI insolvency proceed-

ing.[6]  Inasmuch as Aries' legitimate rights, if any, could have been safeguarded and enforced in a proper fashion within its bankruptcy case, there was no necessity to strain to recognize standing on Pignato's part in order to prevent injustice.  Appellant's end run carried him well outside the field of play.

## III.  CONCLUSION

We are constrained to conclude that as surely as strawberries do not grow in the sea, appellate standing has not taken root in the wilderness of this record.  Like a fish out of water or in the wood, appellant has no purchase in his own right sufficient to permit him to prosecute this appeal.  The challenged order of the bankruptcy court lacked the necessary direct and immediate impact on Pignato's pecuniary interests.  If we are to remain faithful to the rule announced in *El San Juan Hotel*, this appeal cannot be treated as a "keeper."  And because it must be dismissed for want of standing, we have no occasion to reach the merits of the lease assumption issue.

*Appeal Dismissed.*  Costs to appellee.

---

6.  The record is plain that, when the motion for leave to assume was heard and granted on January 14, 1987, only Dein Host's case was before the bankruptcy court.  Pignato does not suggest that he sought relief from the lease in Aries' bankruptcy proceeding.  And if he did, he has not brought an appeal before us from any ruling therein.