# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-2282

_____

In re: AFY, also known as Ainsworth Feed Yards Company, Inc.

*Debtor*

------------------------------

Robert A. Sears; Sears Cattle Co.; Korley B. Sears

*Appellants*

v.

*U.S. Trustee*

*U.S. Trustee*

Joseph H. Badami

*Trustee - Appellee*

Rolling Stone Land & Cattle, LLC

*Interested party - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 13, 2013
Filed: October 23, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Robert A. Sears and Korley B. Sears (collectively, the Sears) claim to be the sole shareholders, officers, and directors of AFY, Inc. (AFY), a debtor in bankruptcy, and Sears Cattle Co. (Sears Cattle). On February 9, 2010, AFY and Sears Cattle contracted to sell jointly-owned property, including Tracts 1 and 4,[1] at auction. In March 2010, AFY voluntarily filed for bankruptcy under Chapter 11, 11 U.S.C. §§ 1101-1174, and Joseph H. Badami was appointed trustee in May of that year.

On May 14, 2010, the bankruptcy court[2] granted Badami's motions to assume the February 9 purchase agreements (sale order). The Sears and Sears Cattle objected to Badami's attempt to assume the Tract 1 purchase agreement. The bankruptcy court later granted Badami's motion to compel Sears Cattle and Robert to close the sales (enforcement order). On June 1, 2010, Robert and Sears Cattle appealed, among other orders, the sale order and the enforcement order to the district court[3] (Tract 1 appeal). On June 17, 2010, the bankruptcy court notified the district court that Badami reported closing all sales of AFY's real estate. On September 15, 2010, the

_____

[1]Only Sears Cattle signed the Tract 4 deed.

[2]The Honorable Thomas L. Saladino, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[3]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

district court dismissed the Tract 1 appeal on the ground that it was moot under 11 U.S.C. § 363(m).

The bankruptcy court also granted Badami's motions to pay all of the Tract 4 proceeds to Farm Credit Services of America (Farm Credit), a secured creditor of AFY, (order to pay funds) and to convert AFY's Chapter 11 reorganization to a Chapter 7 liquidation, 11 U.S.C. §§ 701-784 (conversion order). Robert and Korley, "individually and on behalf of Sears Cattle," appealed the order to pay funds and the conversion order to the district court, which on May 11, 2011, dismissed both appeals for lack of jurisdiction.

The Sears and Sears Cattle (collectively, appellants) appeal the district court's dismissal of all three appeals and the underlying bankruptcy court orders. Because the district court properly dismissed the appeals, we affirm.

## I.    BACKGROUND

Robert and Korley claim to be the sole shareholders, officers, and directors of AFY and Sears Cattle. Before bankruptcy, AFY owned and operated a cattle feed yard and raised crops. AFY also owned certain real estate, including Tracts 1 and 4, jointly with Sears Cattle. On May 29, 2008, AFY and Sears Cattle executed a deed of trust on Tract 4 in favor of Farm Credit. On February 9, 2010, AFY and Sears Cattle sold jointly-owned property, including Tract 1 and Tract 4,[4] at auction. Rolling Stone Land & Cattle, LLC (Rolling Stone) was the highest bidder for Tract 1 and entered into an agreement to purchase Tract 1 with AFY and Sears Cattle that day. ConsAg bought Tract 4. Though AFY arguably owned a 25% interest in Tract 4, only Sears Cattle executed a purchase agreement with ConsAg.

---

[4]See footnote 1.

On March 25, 2010, AFY voluntarily filed for Chapter 11 bankruptcy.[5] Badami was appointed trustee for AFY's estate on May 6, 2010.

### A.    Tract 1 Orders

On May 7, 2010, Badami moved the bankruptcy court for the authority to assume the February 9 purchase agreements as executory contracts and sell the underlying property. See 11 U.S.C. § 365. The Sears and AFY objected to Badami's attempt to assume the Tract 1 purchase agreement. They did not object to Badami's assumption and sale of Tract 4. In the May 14, 2010 sale order, the bankruptcy court granted Badami's motion and declared that Rolling Stone was a purchaser in good faith protected by 11 U.S.C. § 363(m). The same day, the bankruptcy court denied AFY's motion to stay the sale order pending appeal.

Badami moved to compel Sears Cattle and Robert "to execute and deliver all deeds and necessary documents to close the sale[s]," claiming Sears Cattle had "failed and refused" to sign the deeds to convey Tract 1 and Tract 4. The bankruptcy court granted Badami's motion in its enforcement order.

On June 1, 2010, Robert and Sears Cattle appealed the sale order and the enforcement order to the district court. The next day, they moved in the district court to stay the orders pending appeal. The district court denied the stay on June 3, 2010.

On June 17, 2010, the bankruptcy court informed the district court that Badami had reported closing all sales of AFY's real estate. On September 15, 2010, the district court dismissed the Tract 1 appeal on the ground that it was moot under 11 U.S.C. § 363(m) because Rolling Stone bought Tract 1 in good faith, and neither Badami's authorization nor the sale had been stayed pending appeal to the district

_____

[5]In a separate appeal we resolve certain claims against AFY's bankruptcy estate. See Sears v. Sears, ___ F.3d ___, No. 12-1305, slip op. (8th Cir. 2013).

-4-

court. Korley,[6] Robert, and Sears Cattle appeal the district court's dismissal of the Tract 1 appeal.

### B.    Order to Pay Funds and Conversion Order

Badami moved to pay the proceeds from selling Tract 4 to Farm Credit because AFY's debt to Farm Credit, secured by Tract 4, exceeded the amount of the proceeds from selling Tract 4. Robert and Korley,[7] "individually and on behalf of Sears Cattle," objected on the ground that Sears Cattle was entitled to 75% of the proceeds, commensurate with its 75% ownership interest in Tract 4 before the sale. On July 22, 2010, the bankruptcy court granted Badami's motion in the order to pay funds.

The notice of appeal to the district court stated "Robert A. Sears and Korley B. Sears, individually and on behalf of Sears Cattle Co., of which they are the sole directors, officers, and shareholders, and the Objectors in the proceedings below" appeal the order to pay funds. The notice then listed "[t]he names of all parties to the contested matter in which the order was entered that is appealed from and the names and addresses of their respective attorneys" as "Korley B. Sears and Robert A. Sears," Badami, the United States Trustee, and other individuals and trusts not involved in this appeal. The notice did not list Sears Cattle. The notice was signed by counsel for "Robert A. Sears and Korley B. Sears, Appellants." Nothing in the signature block indicated any affiliation with Sears Cattle.

On September 2, 2010, the bankruptcy court granted Badami's motion to convert AFY's Chapter 11 reorganization to a Chapter 7 liquidation, over Robert's and Korley's objection. Robert and Korley appealed this conversion order to the district court.

---

[6]Korley was not a party to the objection, but is included in this appeal.

[7]Other than Badami's assertion in his motion that the proceeds were less than the debt, the record is silent. However, the appellants do not contest this assertion.

On February 14, 2011, the district court entered an order to show cause why the appeals from the order to pay funds and conversion order should not be dismissed for lack of jurisdiction. On May 11, 2011, the district court dismissed these appeals for lack of jurisdiction because (1) Sears Cattle did not object to the motion to pay funds; (2) if Sears Cattle had objected to the motion to pay funds, Sears Cattle did not appeal the order to pay funds; and (3) Robert and Korley did not have standing to pursue either appeal. The Sears and Sears Cattle appeal the district court's dismissal of both appeals to this court.

## II.    DISCUSSION

We review the bankruptcy court's findings of fact for clear error and its legal conclusions de novo. Wetzel v. Regions Bank, 649 F.3d 831, 834 (8th Cir. 2011). "We review a dismissal for mootness de novo." Midwest Farmworker Emp. & Training, Inc. v. U.S. Dep't of Labor, 200 F.3d 1198, 1201 (8th Cir. 2000); accord In re Strong, 138 F. App'x 870 (8th Cir. 2005) (unpublished per curiam) (citing Midwest Farmworker with approval in a bankruptcy case).

### A.    Tract 1 Appeal

The district court dismissed the Tract 1 appeal as moot under § 363(m), which provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

"Section 363(m) moots any challenge to an order approving the sale of assets to a good faith purchaser where (1) no party obtained a stay of the sale pending appeal, and (2) reversing or modifying the authorization to sell would affect the validity of

-6-

the sale or lease." In re Polaroid Corp., 611 F.3d 438, 440-41 (8th Cir. 2010) (footnote omitted).

Appellants admit that, if § 363(m) applies, their Tract 1 appeal must fail. However, they contend (1) "[t]he district court had no jurisdiction to hold that the Tract 1 appeal was moot" because the bankruptcy court lacked subject matter jurisdiction to enter the sale order in the first place; and (2) § 363(m) does not apply to the sale of Tract 1.

### 1.    Jurisdiction to Determine Mootness

Appellants assert the district court lacked subject matter jurisdiction to find the Tract 1 appeal moot because the bankruptcy court did not have subject matter jurisdiction to enter the sale and enforcement orders. When a lower federal court lacks jurisdiction, the appellate court has "'jurisdiction on appeal, not on the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.'" Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998) (quoting United States v. Corrick, 298 U.S. 435, 440 (1936)). A court faced with more than one jurisdictional issue may decide these jurisdictional questions in any order. See id. at 100 n.3 (discussing cases applying this rule and acknowledging courts may decide "a discretionary jurisdiction question before a nondiscretionary jurisdictional question"); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577-78 (1999) (holding a court may decide a personal jurisdiction issue before reaching arguments concerning subject matter jurisdiction). Because "[m]ootness is a jurisdictional question," North Carolina v. Rice, 404 U.S. 244, 245-46 (1971) (per curiam), the district court did not err in disposing of the Tract 1 appeal based on mootness, regardless of whether or not the bankruptcy court had subject matter jurisdiction. See Adkins v. Elggren, 42 F. App'x 252, 254 (10th Cir. 2002) (unpublished) (explaining "the requirements of § 363(m) . . . are jurisdictional in nature). "The appellants raise the jurisdictional argument as if it somehow negates or excuses their failure to obtain a stay. It does not. This appeal is moot [under 11 U.S.C. § 363(m)] because

[appellants] failed to obtain a stay." In re Sax, 796 F.2d 994, 998 (7th Cir. 1986); accord In re Ginther Trusts, 238 F.3d 686, 689 (5th Cir. 2001) (per curiam). The district court was permitted to dismiss the Tract 1 appeal for mootness.

### 2.    Applicability of § 363(m)

On its face § 363(m) appears to apply. The bankruptcy court authorized Badami to sell Tract 1 pursuant to 11 U.S.C. § 363(b) and (f).[8] Appellants did not obtain a stay of the sale order. The final requirement of § 363(m) also is met here: the Tract 1 appeal would affect the sale's validity because appellants seek (1) to vacate Badami's authorization to assume the Tract 1 purchase agreement, and (2) to have the sale "undone." Appellants argue § 363 does not apply to the sale of Tract 1 because (1) the sale of Tract 1 was a § 365 sale without assignment of the contract; (2) the sale was not valid under Nebraska law; and (3) Rolling Stone was not a good faith purchaser.

---

[8]The fact that the sale of Tract 1 involved, in addition to § 363(b), another subsection of § 363 does not preclude applying § 363(m) to the entire transaction. See United States v. Asset Based Res. Grp., 612 F.3d 1017, 1019 n.2 (8th Cir. 2010) (referring to "well-settled bankruptcy jurisprudence applying § 363(m) to the 'free and clear' aspect of a sale under § 363(f)").

The bankruptcy court did not discuss § 363(h)(3), which allows a trustee to sell property owned by the estate free and clear of a co-owner's interest, even if the requirements of subsection (f) are not satisfied, if "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners." Badami's motion recites allegations that, if believed, could support applying subsection (h)(3). These allegations include the necessity of allowing "a decision [to] be made concerning the crop ground before May 15, 2010 to provide for the preparation of farm ground and the planting of crops for the 2010 farming season" and the possibility that Rolling Stone might refuse to follow through with buying Tract 1 or sue AFY's estate for breach of contract if the order were not granted. The bankruptcy court did not make any of the necessary findings or reach any conclusions for us to address subsection (h)(3) now.

Appellants cite Weingarten Nostat, Inc. v. Service Merchandise Company, 396 F.3d 737, 743 (6th Cir. 2005), and In re Rickel Home Centers, Inc., 209 F.3d 291, 300 (3d Cir. 2000), for the proposition that § 363(m) does not apply because "the sale of Tract 1 was a § 365 sale without assignment of the contract." This argument is unavailing. Section 363(m) concerns "the sale or lease of property," without making any mention of assignment. Further, Weingarten and In re Rickel Home Centers, Inc. involved sale and assignment situations, and they do not purport to limit § 363(m) to such situations. See Weingarten, 396 F.3d at 742-44; In re Rickel Home Ctrs., Inc., 209 F.3d at 302 (explaining "'section 363(m) governs the sale of the [property] here, notwithstanding that section 365 applies to the particular mechanics of conveyance'" (quoting Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 498 (3d Cir. 1998))).

Appellants alternatively argue § 363 does not apply because the sale was not valid under Nebraska law, which governs the interpretation of the purchase agreement. This argument is, essentially, a challenge to Badami's authorization to complete the sale, which § 363(m) expressly bars. We reject this attempted end-run around § 363(m).

Finally, appellants maintain § 363(m) does not apply because Rolling Stone was not a good faith purchaser.[9]

---

[9]Rolling Stone incorrectly asserts appellants waived this issue by not raising it below. Appellants raised the issue in their brief opposing dismissal in the district court and have moved to enlarge the record to include the brief. We deny appellants' motion because the brief is already part of the record on appeal. See Fed. R. App. P. 10(a); United States v. Spigner, 416 F.3d 708, 711-12 (8th Cir. 2005) ("The Federal Rules of Appellate Procedure clearly state that the appellate record includes all district court filings and exhibits as well as transcripts of district court proceedings.").

> Lack of good faith is shown by misconduct surrounding the sale. Typically, the requisite misconduct necessary to establish a lack of good faith involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

In re Burgess, 246 B.R. 352, 356 (8th Cir. B.A.P. 2000) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).

Appellants have not alleged fraud, collusion, or "an attempt to take grossly unfair advantage of other bidders." Id. Appellants, citing In re Willemain, 764 F.2d 1019, 1023 (4th Cir. 1985), claim Rolling Stone was not a good faith purchaser because it knew Sears Cattle owned an interest in Tract 1 at the time it signed the purchase agreement and knew of Sears Cattle's, Robert's, and Korley's adverse claims when the sale closed. See In re Willemain, 764 F.2d at 1023 (defining a good faith purchaser as "'one who purchases the assets for value, in good faith, and without notice of adverse claims'" (quoting In re Rock Indus. Mach. Corp., 572 F.2d at 1197)). Some tension exists between the good faith definitions in Burgess and in Willemain. But we need not choose a definition now because appellants' argument fails under either definition.

Rolling Stone's knowledge, at the time it signed the purchase agreement, of Sears Cattle's interest in Tract 1 does not make Rolling Stone's actions in bad faith. Any argument it does is rejected because Sears Cattle signed the purchase agreement, in which Sears Cattle agreed to convey its interest in Tract 1 to Rolling Stone.

In addition, § 363(m) expressly applies "whether or not [the purchaser] knew of the pendency of the appeal" of the trustee's authorization to sell the property. 11 U.S.C. § 363(m). Rolling Stone's knowledge at the time of closing that appellants were appealing the sale order does not affect the applicability of § 363(m). See In re

Vanguard Oil & Serv. Co., 88 B.R. 576, 580 (E.D.N.Y 1988) ("Knowledge on the part of the purchaser of the pending appeal . . . does not constitute 'notice of adverse claims.'").

The district court correctly determined § 363(m) moots the Tract 1 appeal.

## B. Order to Pay Funds Appeal

Appellants claim (1) the district court erred in dismissing the order to pay funds appeal for lack of subject matter jurisdiction; and (2) the bankruptcy court erred in granting Badami's order to pay funds. The district court determined it lacked subject matter jurisdiction because (1) Sears Cattle did not object to the motion to pay funds; (2) if Sears Cattle had so objected, it did not appeal the order to pay funds; (3) the Sears did not have standing to appeal the order; and (4) the Sears could not represent Sears Cattle. Because we conclude the district court correctly determined it lacked subject matter jurisdiction to decide the order to pay funds appeal, we need not reach the merits of the bankruptcy court's decision.

### 1. Sears Cattle

In dismissing the order to pay funds appeal, the district court first concluded Sears Cattle had not objected to Badami's motion to pay funds. The district court reasoned (1) Sears Cattle, as a corporation, could "appear in the federal courts only through licensed counsel," Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-02 (1993); and (2) "the record [did] not establish" that the Sears' attorney "also entered an appearance on behalf of Sears Cattle Co. at the hearing on [Badami's] motion." The district court then held that even if Sears Cattle had objected to Badami's motion to pay funds, it had not appealed the order to pay funds to the district court because the notice of appeal did not "manifest[] a clear intent to include Sears Cattle Co. as a party."

As the district court found, Sears Cattle did not object to the motion to pay funds because no attorney appeared on its behalf in the bankruptcy court. On appeal, appellants' only reference to this finding of fact is the passing statement that "Robert and Korley, individually and on 'behalf of Sears Cattle,' filed an 'Objection to Motion to Pay Funds.'" Not only do appellants fail to support this statement with any argument or citation to legal authority, appellants do not even allude to the fact that the district court found otherwise. By failing to argue meaningfully that this finding was erroneous, appellants waived their right to appeal the issue. See In re Reuter, 686 F.3d 511, 515 n.3 (8th Cir. 2012) (explaining that issues not meaningfully raised in the opening brief are waived).

This waiver affects Sears Cattle's standing to appeal. "[T]he person aggrieved doctrine[] limits standing to persons with a financial stake in the bankruptcy court's order," meaning they were "directly and adversely affected pecuniarily by the order."[10] In re Marlar, 252 B.R. 743, 748 (8th Cir. B.A.P. 2000) (quoting Fidelity Bank, Nat'l Ass'n v. M.M. Grp., Inc., 77 F.3d 880, 882 (6th Cir. 1996)) (internal quotation marks omitted); see In re Zahn, 526 F.3d 1140, 1142 (8th Cir. 2008). "Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential standing requirements associated therewith." In re Troutman Enters., Inc., 286 F.3d at 364; see also In re Cult Awareness Network, Inc., 151 F.3d 605, 607 (7th Cir. 1998) ("Bankruptcy standing is narrower than Article III standing.").

---

[10]The "persons aggrieved" standard is "[d]erived from the now-repealed Bankruptcy Act of 1898." In re Troutman Enters., Inc., 286 F.3d 359, 364 (6th Cir. 2002).

Some circuits considering the issue hold that "[p]rerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding."[11] In re Weston, 18 F.3d 860, 864 (10th Cir. 1994) (quoting In re Schultz Mfg. Fabricating Co., 956 F.2d at 690; accord In re Comm. W. Fin. Corp., 761 F.2d at 1334-35; see also In re The Watch Ltd., 257 F. App'x 748, 750 (5th Cir. 2007) (unpublished) (referring to "the cogent reasoning employed by the majority of circuits addressing this issue" without deciding the issue). But see In re Urban Broad. Corp., 401 F.3d 236, 244 (4th Cir. 2005); Int'l Trade Admin v. Rensselaer Polytechnic Instit., 936 F.2d 744, 747-48 (2d Cir. 1991). The Fifth Circuit explained "[t]his requirement recognizes the need for economy and efficiency." In re The Watch Ltd., 257 F. App'x at 750. The Weston approach comports with the "general rule that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom." Karcher v. May, 484 U.S. 72, 77 (1987).

We do not pick sides, because appellants' failure to preserve their appeal of the district court's holding that Sears Cattle did not object to the motion to pay funds precludes us from addressing Sears Cattle's appeal of the order to pay funds to the district court. We affirm the district court's holding that Sears Cattle could not appeal the order.

### 2. The Sears

Appellants claim the district court erred in holding the Sears did not have standing to appeal from the order to pay funds. The notice of appeal to the district

---

[11]This requirement may be "excused 'if the objecting party did not receive proper notice of the proceedings below and of his opportunity to object to the action proposed to be taken.'" In re Comm. W. Fin. Corp., 761 F.2d 1329, 1335 (9th Cir. 1985) (quoting Richard B. Levin, Bankruptcy Appeals, 58 N.C. L. Rev. 967, 978 n.78 (1980)); see In re Schultz Mfg. Fabricating Co., 956 F.2d 686, 690 (7th Cir. 1992). Appellants do not claim Sears Cattle did not receive proper notice.

court stated the Sears were appealing the order to pay funds "individually and on behalf of Sears Cattle Co., of which they are the sole directors, officers, and shareholders, and the Objectors in the proceedings below." The district court explained the Sears did not have standing because they were not "persons aggrieved" by the order.

"In the bankruptcy context, courts have relied on the shareholder standing rule in holding that shareholders could not appeal a bankruptcy court decision where they asserted only a derivative interest." In re Troutman Enters., Inc., 286 F.3d at 365; accord In re Dein Host, Inc., 835 F.2d 402, 405-06 (1st Cir. 1987). The shareholder standing rule, which applies to even a sole shareholder, "recognizes that corporations are entities separate from their shareholders in contradistinction with partnerships or other unincorporated associations." Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel, 20 F.3d 1311, 1317 (4th Cir. 1994); see Potthoff v. Morin, 245 F.3d 710, 716-17 (8th Cir. 2001).

Appellants first assert the Sears were aggrieved parties because Sears Cattle is an S corporation with flow-through taxation, and selling Tract 4 "generated a substantial personal federal tax liability for Robert and Korley." See 26 U.S.C. §§ 1363, 1366 (concerning the effect of a corporation's election to be taxed under subchapter S of the Tax Code, 26 U.S.C. §§ 1361-1379). Appellants do not cite either any supporting case law or evidence of their tax liability in the record. Under subchapter S, liability for an S corporation's taxes passes through the corporation to the shareholders. See id. § 1366. "While an S corporation is treated differently for taxation purposes, it remains a corporation in all other ways, and it and its shareholders are separate entities" who generally do not have standing to sue on the corporation's behalf. Smith Setzer & Sons, Inc., 20 F.3d at 1318; see also id. at 1316-18 (concluding a shareholder lacked standing to bring a constitutional challenge on behalf of an S corporation). Any impact on the Sears' personal tax liability is an

-14-

indirect, rather than a direct, consequence. The shareholder standing rule prevents the Sears from obtaining standing on this basis. See In re Troutman Enters., Inc., 286 F.3d at 365; In re Dein Host, Inc., 835 F.2d at 405-06.

Appellants next contend the Sears have standing based on Singleton v. Wulff, 428 U.S. 106 (1976). In Singleton, the United States Supreme Court decided a litigant has general prudential standing to assert a legal right of a non-party if (1) the non-party's "enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue," e.g., the litigant is "fully, or very nearly, as effective a proponent of the right as the" non-party, and (2) there is "some genuine obstacle to" the non-party's ability to assert its own right, id. at 114-16.

Singleton only addresses general prudential standing requirements. See id. at 113-16. It does not confer appellate standing in the bankruptcy context—which involves a stricter standard. See id.; In re Troutman Enters., Inc., 286 F.3d at 364. The cases cited by appellants are not contrary. Both cases mentioned Singleton only with regard to general prudential standing.[12] See In re Troutman Enters., Inc., 286 F.3d at 364; Kane v. Johns-Manville Corp., 843 F.2d 636, 643-44 (2d Cir. 1988).

Because the Sears cannot assert a direct interest in the litigation, they lack appellate standing for bankruptcy purposes under the shareholder standing rule. The district court did not err in finding the Sears lacked standing to appeal the order to pay funds.

---

[12]In fact, the Sixth Circuit concluded in In re Troutman Enterprises, Inc., 286 F.3d at 364-65, that the shareholder-plaintiffs lacked standing under the shareholder standing rule.

### C. Conversion Order Appeal

#### 1. Badami's Standing

Appellants claim Badami lacked standing to file the motion to convert because AFY is a farmer and 11 U.S.C. § 1112(c) provides:

> The court may not convert a case under [Chapter 11] to a case under chapter 7 of this title if the debtor is a farmer . . . unless the debtor requests such conversion.

"Where a statute names the parties granted [the] right to invoke its provisions such parties only may act." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6-7 (2000) (quoting 2A N. Singer, Sutherland on Statutory Construction § 47.23 p. 217 (5th ed. 1992)). The parties agree that AFY, which owned and operated a cattle feed yard and raised crops, is a farmer. See 11 U.S.C. § 101(20), (21), (41). Though Badami—not AFY itself—requested the conversion, Badami proposes the term "debtor" in § 1112(c) includes the trustee. We agree.

The Bankruptcy Code defines a debtor as a "person . . . concerning which a case under this title has been commenced." 11 U.S.C. § 101(13). Where, as here, § 1112(c) applies, this definition at first appears to limit the ability to request conversion to the debtor-farmer itself. However, where a trustee has been appointed, § 1112(a) precludes a debtor who is not a debtor-in-possession (i.e., if a trustee has been appointed) from initiating a conversion from a Chapter 11 reorganization to a Chapter 7 liquidation. See 11 U.S.C. § 1101(1). Thus, a trustee can do so. See 11 U.S.C. § 1106(a)(5) (requiring a trustee to take one of several possible actions "as soon as practicable," including "recommend conversion of the case to a case under chapter 7").

Reading "debtor" in subsection (c) of § 1112 as including the trustee is supported by analogous Supreme Court case law. For example, after stating only the

trustee could invoke another section of the Bankruptcy Code, the Supreme Court noted debtors-in-possession could also invoke the same section because debtors-in-possession "are expressly given the rights and powers of a trustee by 11 U.S.C. § 1107." Hartford Underwriters Ins. Co. , 530 U.S. at 6 & n.3.

Because AFY was not a debtor-in-possession, Badami had standing to move to convert.

### 2.    The Sears' Standing

The district court found the Sears lacked standing to appeal from the conversion order because they were not persons aggrieved by the order. Under the shareholder standing rule, the Sears do not have standing to appeal the conversion order if their only interest in the appeal is derivative of AFY. See, e.g., In re Troutman Enters., Inc., 286 F.3d at 365. Appellants claim the conversion order "directly and adversely affects [the Sears] pecuniarily" because (1) the conversion order changes distributions they might receive from a surplus; (2) AFY is worth less in a Chapter 7 liquidation; (3) Singleton, 428 U.S. 106, gives them standing; (4) Franchise Tax Board of California v. Alcan Aluminum Ltd., 493 U.S. 331, 336 (1990), allows them to base their standing on Badami's bad faith; and (5) 11 U.S.C. § 1109(b) confers standing on them.

### a.    Effect on Distributions

Appellants contend the conversion order directly affects the Sears pecuniarily because (1) distributions to stockholders are made from different sources, at different times, and in different amounts under Chapters 7 and 11; (2) AFY's estate would be solvent if this court reverses, in a separate appeal, the bankruptcy court's decision allowing certain claims against AFY's estate; and (3) "[w]here the debtor is solvent and there is a surplus for shareholders, the shareholders have standing to appeal from orders affecting the surplus."

Based on the rule that "shareholders [cannot] appeal a bankruptcy court decision where they assert[] only a derivative interest," In re Troutman Enters., Inc., 286 F.3d at 365; accord In re Dein Host, Inc., 835 F.2d at 405-06, the District Court for the Northern District of Illinois held that the fact bankruptcy litigation could result in a surplus to a corporate debtor does not confer appellate standing on the corporation's shareholders, explaining

> this surplus would belong to [the corporation] and not to [its] shareholders. [The corporation], through its officers and directors, will decide whether to retain the capital or distribute it to shareholders. The shareholders themselves have no immediate right to the surplus.

In re Cent. Ice Cream Co., 62 B.R. 357, 359-60 (N.D. Ill. 1986) (internal citation omitted). We find this reasoning persuasive.

We have held that a *debtor* may have standing to appeal from an order of the bankruptcy court in certain circumstances. See Kapp v. Naturelle, Inc., 611 F.2d 703, 707 (8th Cir. 1979); see also In re El San Juan Hotel, 809 F.2d 151, 155 & n.6 (1st Cir. 1987) (noting that an exception to the "general rule . . . that only the trustee has standing to appeal from a bankruptcy court order" is "if a successful appeal *by the debtor* would create an estate that has assets in excess of liabilities") (emphasis added). Because AFY is the debtor in this case, these cases do not suggest the Sears have standing to appeal the conversion order.

The Ninth Circuit adopted a more expansive approach. Although In re International Environmental Dynamics, Inc., 718 F.2d 322, 326 (9th Cir. 1983), includes broad language that "in a case involving competing claims to a limited fund, a claimant has standing to appeal an order disposing of assets from which the claimant seeks to be paid," the specific standing issue before that court was quite

narrow. The Ninth Circuit held that a creditor (Creditor A) of the debtor could appeal the bankruptcy court's order authorizing the debtor to reimburse other creditors for sums Creditor A claimed Creditor A "had in fact . . . paid." Id. at 323-24, 326. In doing so, the court distinguished a case in which a debtor did not have appellate standing, explaining Creditor A did "not claim standing as a surrogate for the [debtor], but instead allege[d] that it [was] itself entitled to the disputed funds" because of its status as a creditor. Id. at 326 n.8. Here, the Sears' claim to standing is, essentially "as a surrogate for" AFY because their asserted entitlement to the funds derives from their status as shareholders. This distinguishes the present case from In re International Environmental Dynamics, Inc.

Our review of the relevant case law discloses two cases holding a debtor's shareholders had standing to appeal an order of the bankruptcy court. In re First Colonial Corp. of America, 544 F.2d 1291, 1296-97 (5th Cir. 1977), conferred appellate standing on a solvent corporate debtor's shareholders to challenge an award of attorney fees to the trustee, who also was acting as the bankruptcy estate's attorney. The present case is distinguishable because First Colonial based standing in part on the fact that the trustee there had "a personal financial stake" in the outcome of the same proceeding that was adverse to the debtors. Id. at 1297. Appellants here have not asserted—nor can we discern—that Badami has "a personal financial stake" in whether the disputed claims are allowed. As the Fifth Circuit acknowledged, In re First Colonial Corp. of America was "hardly the usual case." Id.

The best support for appellants' argument comes from In re Patriot Co., 311 B.R. 71, 74 (8th Cir. B.A.P. 2004), which extended appellate standing to the debtor's shareholders, reasoning "[i]f a party can show a reasonable possibility of a surplus after satisfying all priority and general unsecured claims, then that party has shown a pecuniary interest and has standing to appeal."

-19-

Under the shareholder standing rule, appellants do not have standing because the interest they assert is indirect and derivative of AFY. Any "surplus would belong to [AFY] and not to [appellants, its] shareholders. [AFY], through its officers and directors, will decide whether to retain the capital or distribute it to shareholders." In re Cent. Ice Cream Co., 62 B.R. at 359-60 (internal citation omitted). In re Patriot Co.—and In re International Environmental Dynamics Inc. and In re First Colonial Corp. of America, to the extent they support appellants' argument—are unpersuasive outliers. We hold in this case that the possible solvency of AFY's estate does not give the Sears standing, regardless of the outcome of the appeal involving the claims against AFY's estate.

### b.    Remaining Standing Arguments

Nor are we persuaded by appellants' remaining arguments for standing. Appellants claim, without reference to any supporting statute or case, the Sears are aggrieved parties because AFY's assets are worth less in a Chapter 7 case than in a case under Chapter 11. Because the Sears' interest in the value of AFY's assets derives from their status as shareholders, any injury to that interest is not sufficiently direct to confer standing on the Sears to appeal from the conversion order.

Appellants alternatively assert that they have standing because Badami acted in bad faith. See Franchise Tax Bd. of Cal., 493 U.S. at 336 (acknowledging the shareholder standing rule does not bar suits by a shareholder where the management refused, in bad faith, to pursue a suit). Appellants claim Badami acted in bad faith because he "knew or should have known" he lacked standing to move to convert. Badami's motion to convert was not in bad faith, because, as discussed above, Badami had such standing. Franchise Tax Board of California is not applicable in this case.

We also reject appellants' argument for standing based on Singleton, 428 U.S. 106, for the same reasons we find it unpersuasive with regard to the Sears' standing to appeal from the order to pay funds.

Finally, appellants assert the Sears have standing, even if they are not aggrieved parties, because 11 U.S.C. § 1109(b) allows "[a] party in interest, including . . . an equity security holder, . . . [to] raise and [to] appear and be heard on any issue in a case under" Chapter 11. Our precedent clearly limits standing to appeal a decision of the bankruptcy court to persons aggrieved. See In re Zahn, 526 F.3d at 1142; see also In re Combustion Eng'g, Inc., 391 F.3d 190, 214 & n.21 (3d Cir. 2004) (contrasting the "restrictive" "persons aggrieved" standard for "bankruptcy appellate standing . . . with the broad right of participation in the early stages of a bankruptcy proceeding" created by § 1109).

The district court correctly concluded the Sears lacked standing to appeal the conversion order.

## III.   CONCLUSION

We affirm.[13]

_____

_____

[13]On the merits, appellants, citing Nebraska tort law, claim Badami "had no right to pay the net Tract 4 proceeds to Farm Credit" and "should have kept them at least until who was entitled to [the proceeds]—Sears Cattle or Farm Credit—was determined." After selling jointly owned property, the trustee must distribute the net sales proceeds "*according to the interests* of such spouse or co-owners, and of the estate." 11 U.S.C. § 363(j) (emphasis added). AFY and Sears Cattle executed a deed of trust on Tract 4 in favor of Farm Credit. Farm Credit's resulting interest was superior to the interests of either AFY or Sears Cattle. Appellants argue the conversion order should be reversed because "[s]ection 1112(b)(1) and 1112(c) of the Code are controlling on the merits." Appellants did not explain why these provisions, which contain numerous requirements related to converting a Chapter 11 reorganization to a Chapter 7 liquidation, might require reversing the conversion order. See In re Reuter, 686 F.3d at 515 n.3.