# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 17-6028

_____

In re: Kent McDougall, doing business as Twin Creek Ranch, doing business as
E&K Holdings; Erica M. McDougall

*Debtor*s

-------------------------------

Kent McDougall; Erica M. McDougall

*Plaintiff*s

v.

Ag Country Farm Credit Services, PCA

*Defendant - Appellee*

Michael McDougall; Bonita McDougall

*Defendants - Appellants*

Erik Ahlgren

*Trustee*

_____

Appeal from United States Bankruptcy Court
for the District of North Dakota - Fargo

_____

Submitted: June 19, 2018
Filed: July 9, 2018

_____

Before SCHERMER, NAIL and DOW, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

Michael and Bonita McDougall (McDougalls) appeal the bankruptcy court's (1) judgment in favor of defendant AgCountry Farm Credit Services, PCA (AgCountry) in an adversary proceeding filed by Kent M. McDougall and Erica M. McDougall (Debtors); and (2) order denying a motion to alter or amend judgment.

The McDougalls have asked us to consider the validity of a lien of AgCountry on property owned by the McDougalls based on an argument of state law fraud. Before reaching that issue, we have an independent obligation to examine our jurisdiction and that of the bankruptcy court. *Speciality Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773 (8th Cir. 1995). "When a lower federal court lacks jurisdiction, the appellate court has 'jurisdiction on appeal, not on the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.' " *Sears v. U.S. Trustee (In re AFY, Inc.)*, 734 F.3d 810, 816 (8th Cir. 2013) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) and *United States v. Corrick*, 298 U.S. 435, 440 (1936)). We review the issue of jurisdiction *de novo*. *Speciality Mills, Inc.,* 51 F.3d at 773.

Because we determine that the bankruptcy court did not have jurisdiction to determine the dispute pertaining to the McDougalls, we do not decide the merits of this appeal. We remand this matter to the bankruptcy court with instruction to

dismiss the McDougalls' claim regarding the validity of AgCountry's lien against the Home Quarter (as defined as follows).

## BACKGROUND

Facts about this matter were stated in our December 21, 2017 decision granting in part and denying in part AgCountry's motion to dismiss this appeal, some of which we repeat here. The Debtors are farmers and ranchers who purchased 880 acres of land under a contract for deed and lived on 160 acres within that parcel (Home Quarter). After the Debtors sold the Home Quarter to the McDougalls, the Debtors occupied that portion of their land rent-free.

When the Debtors exhausted their lines of credit with a different lender, they borrowed money from AgCountry to pay their operating expenses. During the period of time from August 2014 to December 2015, the Debtors obtained almost $400,000 from AgCountry under eight separate loans, two of which were secured.

In March 2016 when the Debtors had depleted their available financial resources, the Debtors were advised that in order to continue working on an arrangement to refinance their debt and borrow additional funds from AgCountry, they needed loan extensions. On March 30, 2016, AgCountry approved short term loan extensions in return for the Debtors providing AgCountry with a security interest in additional real estate. On March 31, 2016 the Debtors: (1) signed eight Promissory Notes and Loan Agreement Modifications; and (2) executed a mortgage to secure payment of the notes. Although the legal description in the mortgage included a portion of the Home Quarter in the many parcels of real estate it identified, the McDougalls, not the Debtors, owned the Home Quarter at that time. Five days later, on April 5, 2016, the McDougalls conveyed the Home Quarter to the Debtors. The McDougalls transferred the Home Quarter to the Debtors because they believed that would help the Debtors qualify for an operating loan. On April 7, 2016, when the Debtors learned that Ag Country was not loaning more funds to them, the Debtors

-3-

reconveyed the Home Quarter back to the McDougalls. Unfortunately for the McDougalls, the Home Quarter was already encumbered by AgCountry's mortgage, which had been recorded on April 5, 2016.

Six months later, the Debtors filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code. The Debtors then filed an adversary proceeding naming the McDougalls and Ag Country as defendants. In their answers to the Debtors' complaint and amended complaint, the McDougalls asked the bankruptcy court to invalidate AgCountry's lien on the Home Quarter based on fraud. The bankruptcy court entered judgment in the adversary proceeding for AgCountry and against the Debtors.[1] It examined North Dakota law and after discussing the McDougalls's transfer of the Home Quarter to the Debtors and the Debtors' grant of a mortgage in the Home Quarter to AgCountry, it stated that the Debtors did not meet their burden of showing actual fraud. According to the bankruptcy court, AgCountry held a "valid and enforceable mortgage lien against the Home Quarter." The effect of the bankruptcy court's decision was to determine the nature of the McDougalls' rights in the Home Quarter.

The Debtors converted their bankruptcy case to Chapter 7. The bankruptcy court then denied a motion to alter or amend its judgment entered in the adversary proceeding.

The Debtors, the McDougalls, and the Chapter 7 Trustee filed a notice of appeal from the bankruptcy court's: (1) judgment; and (2) order denying the motion to alter or amend judgment. On December 21, 2017, we granted a motion by AgCountry to dismiss the appeal by the Debtors based on lack of standing and the

---

[1] Earlier in the proceedings, the bankruptcy court granted summary judgment for AgCountry on Debtors' complaint based on Bankruptcy Code § 548. This order was not appealed.

appeal by the Chapter 7 Trustee because it was untimely. We denied AgCountry's request to dismiss the appeal by the McDougalls.

## DISCUSSION

Because the appeals filed by the Debtor and the Chapter 7 Trustee were dismissed by our previous order, we do not consider any issues advanced by or pertaining to those parties.

The only matter left for us to consider is the McDougalls' arguments concerning their interest in the Home Quarter. Unfortunately for the McDougalls, there is no basis for bankruptcy court jurisdiction over the claim they assert.

Bankruptcy courts, by reference from the district courts, have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a).

Bankruptcy proceedings are comprised of core proceedings and non-core, related proceedings. *Specialty Mills, Inc.*, 51 F.3d at 773. A core proceeding is one that "arise[s] only in bankruptcy or involve[s] a right created by federal bankruptcy law. *Id*. (citation omitted); *see* 28 U.S.C. § 157(b)(2). Related proceedings are non-core. They "do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy." *Id*. at 774.

"Claims 'arising under' Title 11 are 'those proceedings that involve a cause of action created or determined by a statutory provision of title 11.' " *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.),* 567 F.3d 1010, 1018 (8th Cir. 2009) (citations omitted). " '[A]rising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* (citation omitted).

In the Eighth Circuit, the "conceivable effect" test is used to determine the existence of "related to" jurisdiction:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy....
>
> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir. 1987) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995)).

The McDougalls were named as defendants in the adversary proceeding brought in the bankruptcy court by the Debtors. Notwithstanding the fact that they were not plaintiffs in the action, the McDougalls failed to assert a cross-claim or a counterclaim. On appeal, the McDougalls seek to challenge the bankruptcy court's judgment against the Debtors and in favor of AgCountry by arguing state law fraud and whether AgCountry holds a lien on their property. We will not consider on appeal for the McDougalls a matter that was not properly brought by them before the bankruptcy court.

To the extent the McDougalls asserted before the bankruptcy court their rights concerning whether AgCountry holds a lien on the Home Quarter, the bankruptcy court had no jurisdiction over the dispute between the McDougalls and AgCountry. The McDougalls brought no cross-claim against AgCountry and no counterclaim against the Debtors. The bankruptcy court did not have "arising under" or "arising in" jurisdiction over the McDougalls' state law fraud claim which was not created or

determined by the Bankruptcy Code and which could certainly exist outside of bankruptcy.

Related to jurisdiction is broad, but it is not without limits and "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)). The alleged dispute between the McDougalls and AgCountry is a state law fraud dispute between two non-debtors (the McDougalls and Ag Country) about property (the Home Quarter) that was <u>never</u> property of the bankruptcy estate, and the outcome of which would not effect the bankruptcy estate.[2] Although "[p]roceedings 'related to' the bankruptcy include ... suits between third parties which have an effect on the bankruptcy estate," related to jurisdiction does not exist here because the McDougalls' claim would not have an effect on the bankruptcy estate. *Farmland*, 567 F.3d at 1019 (quoting *Celotex Corp.*, 514 U.S. at 307 n.5). Since a date before the Debtors filed their bankruptcy petition, the transfers of the Home Quarter between the Debtors and the McDougalls were complete, ultimately returning the McDougalls' title to that land. The claim the McDougalls present to us on appeal consists only of whether the McDougalls hold title to the Home Quarter free of AgCountry's lien (nothing more). This sought nothing from the bankruptcy court on behalf of or from the Debtors or their estate.

When questioned at oral argument concerning the basis for jurisdiction by the bankruptcy court, the parties were not able to satisfactorily explain or substantiate how the outcome of the dispute between the McDougalls and AgCountry could have had a conceivable effect on the Debtors' bankruptcy estate, and the record does not suggest that it did. Counsel referred at oral argument to the possibility that the encumbrance of the McDougalls' land by the Debtors' grant of the mortgage to

---

[2] Since the Debtors' and Trustee's appeals were dismissed, we do not consider the bankruptcy court's jurisdiction over other issues raised by the Debtors and addressed by the bankruptcy court.

AgCountry created a debt from the Debtors to the McDougalls. The bankruptcy court's opinion and the record did not show and would not support a finding of such liability at the time of trial.

## CONCLUSION

Because we may not consider on appeal the merits of a matter for which there would not have been jurisdiction in the bankruptcy court, we do not consider the merits of the McDougalls' arguments on appeal. This matter is remanded to the bankruptcy court with instruction to dismiss the McDougalls' claim regarding the validity of AgCountry's lien against the Home Quarter.

_____