# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 25-6008

_____

In re:  Billy Joe Roper, Jr.; Vanessa Gabrielle Roper,
formerly known as Vanessa G. Riffenburg

Debtors

------------------------------

Logan R. Riffenburg

*Respondent - Appellant*

v.

Mark Randy Rice

*Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Arkansas – Little Rock

_____

Submitted: October 3, 2025
Filed: December 16, 2025

_____

Before HASTINGS, Chief Judge, SURRATT-STATES and NORTON,
Bankruptcy Judges.

_____

HASTINGS, Chief Judge.

Appellant Logan R. Riffenburg appeals the bankruptcy court's order granting Chapter 7 Trustee/Appellee Mark Randy Rice's Motion to Approve Sale of Estate's One-Half Interest in Real Property, Free and Clear of Liens and Claims. Riffenburg filed an Emergency Motion to Stay Pending Appeal with this Court. The motion prompted the Trustee to consummate the sale and file a Motion to Dismiss under 11 U.S.C. § 363(m), arguing that the sale is statutorily moot. For the reasons provided below, the Trustee's Motion to Dismiss is granted, and Riffenburg's Emergency Motion to Stay Pending Appeal is denied because it is moot.

## BACKGROUND

Debtors Billy Joe Roper, Jr., and Vanessa Gabrielle Roper petitioned for bankruptcy relief on March 16, 2023. Debtor Vanessa Roper listed no interest in real property on Debtors' schedules and disclosed no real property transfer outside the ordinary course of business on Debtors' Statement of Financial Affairs. Debtors received their discharge on June 12, 2023.

When they were married, Debtor Vanessa Roper and Riffenburg purchased a mobile home and an eighty-acre tract of real property located at 390 Haywood Lane, Mountain View, Arkansas, (Real Property) for $187,900. Debtor Vanessa Roper and Riffenburg divorced in June 2022, less than a year after they purchased the Real Property in August 2021. Under the terms of their divorce, Debtor and Riffenburg agreed to transfer the Real Property to their daughter, Claudia L. Riffenburg. Neither Debtor nor Riffenburg took the steps necessary to transfer the Real Property to Claudia Riffenburg. After their divorce, Riffenburg retained possession of the Real Property and used it as his primary residence. As of September 2024, Claudia Riffenburg resided at the Real Property as well.

The Trustee filed an adversary proceeding against Riffenburg and Claudia Riffenburg, seeking to avoid the anticipated but unconsummated transfer of Debtor

Vanessa Roper's interest in the Real Property to Claudia Riffenburg and seeking a finding that the Trustee is a bona fide purchaser for value under § 544(a)(3) with an interest superior to Claudia Riffenburg, among other claims. Riffenburg and Claudia Riffenburg answered the Complaint and Amended Complaint, asserting that the Real Property is the homestead of both Riffenburg and Claudia Riffenburg; the terms of the divorce decree determine the property interests in the Real Property and the Trustee is precluded from challenging the divorce decree; the divorce decree is an arms-length property settlement supported by adequate consideration; Debtor Billy Joe Roper's debt comprised all of the debt Debtors sought to discharge; and co-Debtor Vanessa Roper had no separate debt to satisfy from her interest in the Real Property. On summary judgment, the bankruptcy court found in favor of the Trustee on his § 544(a)(3) claim and voided any transfer of property to Claudia Riffenburg, ruling that Debtor's interest in the real property constitutes and remains property of the bankruptcy estate.

On March 26, 2025, the Trustee filed a motion seeking court approval of a proposed sale of the bankruptcy estate's one-half interest in the Real Property to Blue Sun Capital LLC for the sum of $40,000. Riffenburg and Claudia Riffenburg opposed the motion, arguing the same affirmative defenses and objections they raised in opposition to summary judgment in the adversary proceeding. They also maintained that the Trustee had not met the elements of 11 U.S.C. § 363(h), and the Trustee could not establish any benefit to co-Debtor Vanessa Roper's separate unconsolidated bankruptcy estate from liquidating the bankruptcy estate's interest in the Real Property because she had no debt to satisfy.

The bankruptcy court held a hearing on the motion to sell the Real Property on May 8, 2025. After hearing testimony and receiving exhibits, the bankruptcy court granted the Trustee's motion and approved the terms of the Asset Purchase Agreement attached to it. In its oral ruling, the bankruptcy court found that the sale was in good faith, for fair value and in the best interests of the bankruptcy estate.

In its analysis of good faith, the bankruptcy court focused on the Trustee's conduct, concluding that the Trustee had the right and obligation to sell the bankruptcy estate's interest in the Real Property. Responding to Riffenburg's concern regarding the Trustee selling the bankruptcy estate's interest in the Real Property when co-Debtor Vanessa Roper had no individual debt, the bankruptcy court found that Debtors' bankruptcy schedules show the debts listed were owed by both parties and "some or all of these other creditors might be creditors of Ms. Roper," and concluded that the Trustee demonstrated good faith in pursuing the sale. Bankr. Case No. 4:23-bk-10768, Doc. 48 at 104-105. The bankruptcy court reserved ruling on the underlying issue regarding whether the claims reflect debt owed by Debtor Vanessa Roper and questions regarding substantive consolidation.[1]

The bankruptcy court made no specific findings regarding the good faith of the buyer under 11 U.S.C. § 363(m). Other than the Trustee's testimony regarding his negotiations with the buyer and the general terms of the sale, the motion and the Asset Purchase Agreement, the record includes no references to purchaser Blue Sun Capital or its good faith.

---

[1]In its order denying Riffenburg's Motion to Stay Trustee Sale Pending Resolution of Appeal, the bankruptcy court explained:

> Riffenburg complains he was not allowed to litigate the validity of various debts Roper listed on her schedules and commensurate proofs of claim. Yet, Riffenburg nor anyone else has filed any objections to claims, the claimants are not on notice, and they did not know to appear and defend their claims. Due process applies to them also. The court preserved and still has not ruled on any issues of substantive consolidation or the validity of any claims scheduled and/or filed in this case against Roper. These issues have not been pertinent to the narrow path Rice adopted of first dealing solely with the avoidance of Claudia Riffenburg's interest using the trustee's strong-arm powers and then selling Roper's undivided one-half interest without forcing a sale of the whole. The remaining issues are preserved and still extant.

Bankr. Case No. 4:23-bk-10768, Doc. 61 at 4 (June 20, 2025).

The bankruptcy court entered its one-page written order granting the motion and approving the sale on May 15, 2025. Riffenburg filed his notice of appeal one week later.

On May 29, 2025, Riffenburg filed a Motion to Stay Trustee Sale Pending Resolution of Appeal. The bankruptcy court denied the motion on June 20, 2025.

In his Appellant's Brief filed August 8, 2025, Riffenburg made no mention of purchaser Blue Sun Capital or its good faith. Rather, he argued that the proposed sale "lacked good faith because [of] the Chapter 7 Trustee's conflict of interest." App. Br. at 6.

On August 13, 2025, days after filing his brief and designation of record, Riffenburg filed an Emergency Motion to Stay Pending Appeal with this Court. Six days later, on August 19, 2025, the Trustee executed a Trustee Deed Free and Clear of Liens, conveying the Real Property to Blue Sun Capital. The Stone County Circuit and County Clerk recorded the deed on August 29, 2025.

The Trustee filed a Motion to Dismiss on September 5, 2025, advising that he sold the Real Property and arguing that this appeal is statutorily moot under 11 U.S.C. § 363(m) because Riffenburg failed to obtain a stay of the sale. Riffenburg opposed the motion, arguing this Court retains jurisdiction to decide whether relief remains available and whether the statutory protection applies; effective relief remains possible; and good faith is in dispute. The Trustee did not file a reply to Riffenburg's opposition or a response to Riffenburg's Emergency Motion to Stay Pending Appeal.

## ANALYSIS

The Trustee filed a Motion to Dismiss arguing that the appeal is statutorily moot under 11 U.S.C. § 363(m), warranting dismissal. Section 363(m) provides:

-5-

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). This statute, which the Eighth Circuit Court of Appeals refers to as the "finality rule," "'protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale.'" *Humphrey v. Christopher*, 146 F.4th 682, 687 (8th Cir. 2025) (quoting *Off. Comm. of Unsecured Creditors v. Trism, Inc. (In re Trism, Inc.)*, 328 F.3d 1003, 1006 (8th Cir. 2003)). Section 363(m) enhances the value of a debtor's assets sold in a bankruptcy sale by providing reliability and finality. *In re Trism*, 328 F.3d at 1006. "[W]ithout assurance that a § 363(b) sale is final, potential purchasers of estate assets would be chilled from dealing with the debtor, causing assets to languish idly while the bankruptcy progresses, all the while hemorrhaging value and undermining the very purpose § 363(b) aims to serve." *In re Boy Scouts of Am.*, 137 F.4th 126, 150 (3d Cir. 2025), *petition for cert. filed*, (U.S. Oct. 21, 2025) (No. 25-490). Additionally, "purchasers of bankruptcy estate assets could be dragged into endless rounds of litigation to determine who has what rights in the property," which may substantially reduce the value of estate assets. *Id.* (citations omitted). "Section 363(m)'s finality also strikes a balance between the creditor's interest and the purchaser's interest by producing value for the estate and preventing any modification or reversal of the bankruptcy court's authorization of the sale from affecting the validity of the sale." *In re Trism*, 328 F.3d at 1006 (citation omitted).

Under § 363(m), an appeal is statutorily moot if no party obtained a stay of the sale authorization (bankruptcy court order approving the sale) and a stay of the sale; and "reversing or modifying the authorization to sell would affect the validity of the sale[.]" *Humphrey*, 146 F.4th at 687-88 (citations omitted). The plain

language of the statute also provides that the property must be sold or leased to "an entity that purchased or leased such property in good faith." 11 U.S.C. § 363(m).

The Trustee argues, and Riffenburg concedes, that Riffenburg failed to obtain a stay of the sale and the bankruptcy court order before the Trustee consummated the sale of the Real Property to Blue Sun Capital. It is also apparent that reversing or modifying the bankruptcy court order granting the Trustee's motion to sell would affect the validity of the Real Property sale. The heart of Riffenburg's claims on appeal rests with the bankruptcy court's decision to approve the Real Property sale when co-Debtor Vanessa Roper, who held an interest in the Real Property, allegedly owed no debt. Riffenburg repeatedly argued that, absent substantive consolidation (which the bankruptcy court did not order), liquidation of the Real Property served no sound business purpose and caused him irreparable harm. Consequently, deciding in his favor would affect the validity of the sale.

Riffenburg argues that good faith is in dispute on appeal, precluding this Court from finding that § 363(m) compels dismissal of this appeal. In support of this claim, Riffenburg argues that the Trustee manufactured mootness by delaying sale completion until after Riffenburg filed his Appellant's brief; authority from other jurisdictions suggests the Trustee's "manipulation of timing or efforts to suppress meaningful review undermine good faith;" and the Trustee's conduct before the bankruptcy court lacked good faith and is "inexorably intertwined with the good faith of the transaction at issue." Resp. to Mot. to Dismiss at 5.

Riffenburg misconstrues the "good faith" language in § 363. "Section 363(m) protects a *good faith purchaser* and lists no other exceptions or any other qualifications to receive the protection of § 363(m)." *In re Trism*, 328 F.3d at 1008 (emphasis added). Riffenburg's assertions that *the Trustee* demonstrated a lack of good faith on appeal with his delay in consummating the sale and before the bankruptcy court in administering the Real Property do not advance his arguments regarding the inapplicability of § 363(m). *See Clearview E. Fund, LLC v. Woodward (In re Hum. Hous. Henrietta Hyatt, LLC)*, 666 B.R. 332, 351 (B.A.P. 6th Cir. 2025)

-7-

(appellants' arguments "were always that *the Trustee* was being unfair in not allowing it to bid and/or rejecting its offer. The seller's conduct is not relevant except to the extent of fraud or collusion with the purchaser, neither of which were alleged."); *Green v. Nosek*, No. 22-CV-972, 2022 WL 16857106, at \*5 (D. Minn. Nov. 10, 2022) (finding appeal moot under 11 U.S.C. § 363 because "although [appellant] makes accusations against the United States Trustee and the subchapter V trustee, he has not alleged that the purchasers were not acting in good faith.").

"Lack of good faith is shown by misconduct surrounding the sale. Typically, the requisite misconduct necessary to establish a lack of good faith involves 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Sears v. U.S. Tr. (In re AFY)*, 734 F.3d 810, 818 (8th Cir. 2013) (citations omitted). The record before the bankruptcy court is devoid of any allegations or evidence that the purchaser, Blue Sun Capital, acted in bad faith. Other than the Trustee's testimony regarding his negotiations with the purchaser and the general terms of the sale, the motion and the Asset Purchase Agreement, the record includes no reference to purchaser Blue Sun Capital or its good faith. Riffenburg did not argue that Blue Sun Capital failed to purchase the Real Property in good faith before the bankruptcy court, foregoing his right to raise it now. *See Nieters v. Sevcik (In re Rodriquez)*, 258 F.3d 757, 759 (8th Cir. 2001) (appellant failed to challenge the buyer's status as a good-faith purchaser before the bankruptcy court while objecting to the initial approval of the sale. "As such, the issue was not preserved for appeal."); *In re Hum. Hous. Henrietta Hyatt, LLC,* 666 B.R. at 349-50 ("Appellants are generally limited on appeal to challenging the bankruptcy court's finding of the purchasers' good faith. Since they failed to object to that finding when that issue was before the bankruptcy court, they did not preserve their limited appellate challenge."); *Tanguy v. West (In re Davis)*, 746 F. App'x 392, 396 (5th Cir. 2018) ("naturally, good faith must be in question prior to a party being required to prove good faith. Importantly, '[a] party may not challenge a purchaser's good faith status under § 363(m) for the first time on appeal.'" (citation omitted) (alteration in original)); *McGehee v. Griffin (In re Griffin)*, 310 B.R. 135, 137 (B.A.P. 8th Cir. 2004) (finding that § 363(m) protected the finality of a property

-8-

sale when no stay was in effect at the time the sale was consummated and "no evidence was presented nor has either appellant even raised an argument that the sale was not in good faith."); *Crowder v. Given (In re Crowder)*, 314 B.R. 445, 449 (B.A.P. 10th Cir. 2004) ("In order to challenge a purchaser's good faith status on appeal, a party must have first raised the issue before the bankruptcy court." (citations omitted)).[2]

Citing *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288 (2023), Riffenburg argues that § 363(m) does not divest this Court of jurisdiction to review the merits of the sale order, to evaluate whether the purchaser acted in good faith, to decide whether relief remains available, and to decide whether statutory protection applies. We agree that § 363(m) is not jurisdictional. Accordingly, the Court retains jurisdiction to decide the applicability of § 363(m), which includes review of the record to evaluate Riffenburg's argument regarding lack of good faith as analyzed above. Since no party challenged the purchaser's good faith and the other § 363(m) requirements are satisfied, we are not persuaded that review of the merits of the sale order is appropriate. *See Humphrey*, 146 F.4th at 688 ("Humphrey was required to stay the sale pending appeal in order to challenge the sale's

---

[2]Even if it were appropriate to consider Riffenburg's arguments related to good faith of the purchaser for the first time on appeal, the conduct he references fails to meet the standard. Riffenburg suggests that his inability to afford to buyout the bankruptcy estate's interest in the Real Property provided a grossly unfair advantage to the purchaser, presumably showing lack of good faith under § 363(m). While unfortunate for Riffenburg, this predicament is not evidence of fraud, collusion or unfair conduct sufficient to meet the standard under § 363(m). *See Thomson v. Smith (In re McQullen Place Co., LLC)*, No. 20-CV-2041, 2020 WL 6281408, at *4 (N.D. Iowa Sept. 25, 2020) ("Having knowledge of a situation but proceeding with a purchase anyway does not amount to bad faith[,]" it is a standard cost/benefit analysis). Likewise, Riffenburg's vague reference to the "sale parties" delay in consummating the sale in his brief in opposition to the Motion to Dismiss is not sufficient to show that Blue Sun Capital failed to purchase the property in good faith.

validity.") (citation omitted); *In re Boy Scouts of Am.*, 137 F.4th at 153-54 ("§ 363(m) contemplates that sale authorizations under § 363(b) may be subject to dispute and nonetheless insulates those authorizations from reversal or modification on appeal."); *In re AFY*, 734 F.3d at 817 (rejecting appellant's argument regarding the validity of the sale under Nebraska law because this assertion was a challenge to the authorization to complete the sale, "which § 363(m) expressly bars.").

Riffenburg's suggestion that this case is not moot because effective relief remains possible is, likewise, rejected. Riffenburg cites *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992), for the proposition that a case is moot only where "it is impossible for a court to grant any effectual relief whatever to the prevailing party." Appellant's Resp. to Appellee's Mot. to Dismiss at 4. The *Church of Scientology* Court analyzed constitutional mootness. Unlike constitutional mootness, "[s]tatutory mootness is not based on the impossibility or inequity of relief, but the preclusion of relief under a statute." *Humphrey*, 146 F.4th at 689 (alteration in original) (citation omitted). The finality rule "reflects the inability of courts to supply a remedy once property has left the bankruptcy estate." *In re Rodriquez*, 258 F.3d at 759 (citation omitted). "Because a judicial opinion on the propriety of the transaction would therefore be advisory-only, we consider such appeals statutorily moot." *Humphrey*, 146 F.4th at 689-90 (citation omitted) (internal quotation marks omitted). Riffenburg's assertion that unwinding the sale is effective relief that remains possible in this case is contrary to the plain language of § 363(m), which bars this relief.

To the extent Riffenburg suggests that this Court could provide effective relief on review of the merits of his appeal by directing treatment and payment of undistributed proceeds, this remedy is outside the scope of Riffenburg's appeal of the order granting the motion to sell the Real Property and premature. Issues related to substantive consolidation, whether the claims filed in the bankruptcy case reflect debt owed by Debtor Vanessa Roper, and the propriety of administering the separate assets of Debtor Vanessa Roper's estate by distributing the sale proceeds to co-Debtor Billy Joe Roper's creditors remain open questions—issues specifically

preserved by the bankruptcy court. We decline to consider them for the first time on appeal. *See MOAC*, 598 U.S. at 296 ("Here, as elsewhere, we decline to act as a court of first view, plumbing the Code's complex depths in the first instance to assure ourselves that Transform is correct about its contention that no relief remains legally available." (citation omitted) (internal quotation marks omitted)).

In summary, Riffenburg failed to obtain a stay of the sale and bankruptcy court order pending appeal, reversal of the order granting the motion to sell will affect the validity of the sale, and no party challenged the good faith of the purchaser before the bankruptcy court. Accordingly, we conclude the appeal is statutorily moot under § 363(m).

## CONCLUSION

For the reasons stated, Appellee Mark Randy Rice's Motion to Dismiss under 11 U.S.C. § 363(m) is granted. This appeal is dismissed. Riffenburg's Motion to Stay Pending Appeal is denied because it is moot.

NORTON, Bankruptcy Judge, dissenting.

Writes the majority: "The record before the bankruptcy court is devoid of any allegations or evidence that the purchaser, Blue Sun Capital, acted in bad faith." I agree with that statement. But, of the record, the converse is also true: there are no allegations or evidence that the purchaser is a good faith purchaser. In the absence of such evidence, the limited safe harbor of § 363(m), by its express terms, does not apply to this appeal. And I think there are reasons to question whether the appeal is otherwise constitutionally moot. I therefore respectfully dissent from the majority's decision to grant the Trustee's motion to dismiss this appeal as moot.

As the majority notes, the Eighth Circuit has a long tradition in both bankruptcy and foreclosure cases of shielding consummated sales from attack on

-11-

appeal and dismissing such attacks as moot.[3] I take no quarrel with the proposition that § 363(m) as interpreted by the Eighth Circuit is an important rule of finality that enhances the value of the sale of a debtor's assets and strikes the appropriate balance between reliability and finality. And there is a certain appeal in applying a simple test, such as the one the majority cites from the Eighth Circuit's recent *Humphrey* case, to determine whether an appeal from a bankruptcy sale is moot, *i.e*., that an appeal is statutorily moot if (1) no party obtained a stay and (2) reversing or modifying the sale would affect the validity of the sale.[4]

The problem I have with that simple test is that it ignores the plain language of § 363(m), which also requires that for § 363(m) to apply the purchaser be one in good faith. The *Humphrey* court did not reach the issue of good faith since the issue before it involved only the first prong: whether the appellant had obtained a stay. The debtor objecting to the sale had obtained a stay of certain state court litigation involving the property[5] and argued her appeal was not therefore statutorily moot.

In rejecting her argument, the Eighth Circuit began with what it described as the pertinent "plain language" of § 363(m):

> any "reversal or modification on appeal of an authorization" approving
> a sale "does not affect the validity of a sale … unless such authorization
> and such sale … were stayed pending appeal."[6]

Staying the state court litigation, the Eighth Circuit correctly reasoned, "did not stay the sale or its authorization by the bankruptcy court."[7] The Eighth Circuit thus vacated the District Court's order staying the sale and dismissed the appeal as statutorily moot.

If anything, *Humphrey's* careful parsing of the plain language of § 363(m) reinforces the fact that we should follow that plain language to determine whether § 363(m) applies. And the plain language of § 363(m) as pertinent here provides:

-12-

[3]*E.g*., *Humphrey v. Christopher* (*In re Humphrey*), 146 F.4th 682, 690 (8th Cir. 2025) (§ 363(m) held to operate to statutorily moot reversal of a non-stayed completed sale); *Cornice & Rose International, LLC v. Four Keys, LLC.*, 76 F.4th 1116, 1122 (8th Cir. 2023) (bankruptcy court's § 363(m) sale order free and clear of liens and interests precluded later copyright infringement suit against purchaser; denying sale orders full preclusive effect would negate the purpose of § 363(m), to ensure the finality of bankruptcy sales); *Fulmer v. Fifth Third Equip. Fin. Co. (In re Veg Liquidation, Inc.)*, 931 F.3d 730, 740 (8th Cir. 2019), *cert. denied* 140 S. Ct. 904 (2020) (trustee's adversary complaint against successful purchaser at bankruptcy sale, alleging inferiority of the bid, was barred by the finality rule governing asset sale § 363); *Sears v. Badami* (*In re AFY*), 734 F.3d 810, 817-18 (8th Cir. 2013), *cert. denied* 134 S. Ct. 2315 (2014) (rejecting argument that § 363(m) did not apply to moot sale to purchaser found by bankruptcy court to have purchased in good faith); *In re Skyline Woods Country Club*, 636 F.3d 467, 471-72 (8th Cir. 2011) (a final § 363 sale order entitled to full faith and credit, but bankruptcy court's sale order did not expand § 363(m)'s exclusive jurisdiction to prevent a subsequent state court order from determining the purchaser's rights); *U.S. v. Asset Based Resource Group*, LLC, 612 F.3d 1017, 1019 (8th Cir. 2010), *rehearing and rehearing en banc denied* 612 F.3d 1017 (8th Cir. 2010) (receivership action; once a foreclosed property is sold to a bona fide third-party purchaser, a court generally lacks the power to craft an adequate remedy); *Asset Based Resource Group, LLC v. U.S. Tr. (In re Polaroid Corp.)*, 611 F.3d 438, 440-41 (8th Cir. 2010) (§ 363(m) moots any challenge to an order approving the sale of assets to a good faith purchaser where no party obtained a stay and reversing or modifying the authorization to sell would affect the validity of the sale); *Official Comm. of Unsecured Creditors v. Trism, Inc. (In re Trism, Inc.)*, 328 F.3d 1003, 1006-07 (8th Cir. 2003) (language of § 363(m) moots any challenge to an order approving the sale of assets;  a challenge to a related provision of an order authorizing the sale affects the validity of the sale when the related provision is integral to the sale; a provision is integral if it is so clearly linked to the sale agreement that modifying or reversing the provision would adversely alter the parties' bargained for exchange); *Jefferson Co. v. Halverson (In re Paulsen)*, 276 F.3d 389, 392 (8th Cir. 2002) (good faith third-party purchasers protected and unstayed sale could not be overturned); *Nieters v. Sevcik (In re Rodriquez*), 258 F.3d 757, 759 (8th Cir. 2001) (failure to raise good faith of the purchaser before the bankruptcy court in addition to failure to obtain stay mooted the appeal); *Wintz v. American Freightways, Inc.* (*In re Wintz Companies*), 219 F.3d 807, 812 (8th Cir. 2000) (failure of appellants to obtain stay pending appeal of property transferred to a bona fide third-party purchaser barred the appeal under § 363(m)); *Jackson v. U.S. (In re Jackson)*, 663 B.R. 738, 742 (B.A.P. 8th Cir. 2024)

The reversal or modification on appeal of an authorization [approving a sale] does not affect the validity of a sale … ***to an entity that***

---

(unstayed foreclosure sale by the IRS of its tax liens mooted debtor's appeal); *McGehee v. Griffin (In re Griffin)*, 310 B.R. 135 (B.A.P. 8th Cir. 2004) (unstayed consummated bankruptcy sale could not be reversed on appeal; no evidence present and no argument raised that sale was not in good faith); *Fields v. Option One Mortg. Corp. (In re Fields)*, 266 B.R. 415, 418 (B.A.P. 8th Cir. 2001), *aff'd* 32 Fed. Appx. 178 (8th Cir. 2002) (appeal from unstayed order lifting the stay after lender foreclosed denied as moot); *Badami v. Burgess (In re Burgess)*, 246 B.R. 352, 356 (B.A.P. 8th Cir. 2000) (appeal from unstayed consummated sale denied as moot).

[4]*Humphrey* cited *Trism* as the basis for the two-prong test. *Humphrey*, 146 F.4th at 682. It is worth noting, however, that in *Trism*, the bankruptcy court made an express finding in the sale order that the purchaser was a good faith purchaser and that the good faith of the purchaser was not an issue on appeal, nor was the appellant Unsecured Creditors Committee seeking to set aside the sale to that purchaser. Rather, the Committee argued that § 363(m) did not apply to a third party, against whom certain avoidance claims were being released under the sales terms, and whether creditors had received proper notice of the release. Thus, when the *Trism* court formulated its two-prong test, the good faith of the purchaser was satisfied. *See Trism*, 328 F.3d at 1006. The Eighth Circuit in *Trism* again carefully parsed § 363(m), finding it applicable because the release terms were "integral" to the sale, and thus that modifying or reversing the release provision would adversely alter the parties' bargained for exchange. The Eighth Circuit again cited *Trism's* two-part test in the *AFY* and *Polaroid Corp.* cases, but both those cases also involved court orders expressly finding that the purchaser was in good faith. *See AFY,* 734 F.3d at 814, 816; *Polaroid Corp.*, 611 F.3d. 440, fn. 2. That is another reason I believe that *Humphrey*'s test should not be relied as definitive in a case like this, where the bankruptcy court was not asked and therefore did not make any factual finding that the purchaser here was a good faith purchaser.

[5]The "property" sold in the case was Humphrey's defensive appellate rights in the litigation.

[6]*Humphrey*, 146 F.4th at 688.

[7]*Id*.

-14-

> *purchased … such property* … unless such authorization and such sale
> … were stayed pending appeal.

(emphasis added).

It is true that, in this case, Appellant Riffenburg did not challenge the purchaser's good faith below and likewise does not do so on appeal. Riffenburg's failure to immediately seek a stay from this Court after being denied one by the bankruptcy court is also a puzzlement.[8] For his part, the Trustee's action in waiting to close the sale (the terms of which sale agreement said that time was of the essence and contemplated closing within 30 days) until after Riffenburg filed his brief and filed the motion for stay smacks of gamesmanship, as does his coyness in not directly disclosing to this Court when the sale to Blue Sun Capital actually occurred.[9] But I agree with the majority that, even if the Trustee willfully attempted to manufacture mootness by closing the sale only after Riffenburg filed his stay motion before us,

---

[8]The bankruptcy court's order approving the sale was entered on May 15, 2025, and Riffenburg filed his notice of appeal a week later, on May 22, 2025. Another week after that, or on May 29, 2025, Riffenburg filed a motion to stay pending appeal; the bankruptcy court denied the motion on June 20, 2025. Riffenburg did not file a motion for stay before this Court for almost another 60 days, or until August 13, 2025. Before this Court could determine Riffenburg's motion for stay pending appeal, the Trustee had consummated the sale.

[9]The Trustee's motion to dismiss the appeal under § 363(m) filed with this Court on September 5, 2025, stated that he "closed the sale of the property subsequent to June 20, 2025"; the Trustee's vagueness caused this Court to issue an order directing the Trustee to provide evidence of when the sale was completed. The Trustee's response showed that he had closed the sale six days after Riffenburg filed his motion to stay – or on August 19 – and recorded his Trustee's deed ten days later, on August 29, 2025. Based on my review of the record below, the Trustee has not yet filed the required itemized statement of sale. *See* Fed. R. Bankr. P. 6004(f)(1)(A).

that is not grounds to challenge the purchaser's – as opposed to the Trustee's – good faith.[10]

It is also true that some of the Eighth Circuit's § 363(m) cases suggest that an opposing party may fail to preserve for appeal a good faith argument if it is not raised

[10]To be sure, the Eighth Circuit's jurisprudence on what is good faith in the context of § 363(m) is somewhat muddled. In *AFY*, the Eighth Circuit quoted the definition of good faith relied on by the Eighth Circuit B.A.P. in *Burgess*, which stated "[l]ack of good faith is shown by misconduct surrounding the sale. Typically, the requisite misconduct necessary to establish a lack of good faith involves 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *AFY*, 734 F.3d at 818, quoting *Burgess*, 246 B.R. at 352 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978). The Eighth Circuit also notes in *AFY* that the Fourth Circuit had held that a good faith purchaser is one who purchases the assets for value, in good faith, and without notice of adverse claims. *Id.*, citing *Rock Indus. Mach. Corp.*, 572 F.2d at 1197, in turn citing *Willemain v. Kivitz (In re Willemain)*, 764 F.2d 1019, 1023 (4th Cir. 1985). Noting the "tension" between the definitions of good faith in *Burgess* and *Willemain*, the *AFY* court said it need not choose a definition of good faith because the appellant's argument failed under either definition. *AFY*, 734 F.3d at 818. The Eighth Circuit did not, however, refer to a later statement in *Burgess* that the "relevant test is two-fold: a good faith purchaser is one who buys in good faith and for value." *Burgess*, 246 B.R. at 355-56. Or, that some courts, like the Tenth Circuit, require the value paid for a purchaser to qualify as being in good faith, as at least 75% of the appraised value of the assets. *Lotspeich v. Holbrook (In re Lotspeich)*, 325 B.R. 209, 218 (10th Cir. B.A.P. 2005) (cites omitted). Given this uncertainty in the definition, it is not clear whether Riffenburg's argument below and on appeal that the Trustee acted in bad faith because of a conflict of interest between the separate bankruptcy estates of Bill and Vanessa Roper would be sufficient to show bad faith of the purchaser in the eyes of the Eighth Circuit, although I do not believe so. I also note that, depending on the formulation of the test for "good faith," the standard of review on appeal among different appellate courts may vary. *Compare Polaroid Corp.*, 611 F.3d at 440, fn. 2 ("A finding of good faith is primarily a factual determination, which [the appeals court] reviews for clear error") (cites omitted); *Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 121 (11th Cir. 2021) ("Whether a buyer purchases in good faith is a mixed question of fact and law" (cites omitted)).

before the bankruptcy court and, that in the absence of any challenge, good faith is presumed, such that once the sold property has left the bankruptcy estate through any unstayed, executed sale, any appeal *ipso facto* must be moot, whether under § 363(m) or Constitutional mootness grounds.[11] I believe the majority has in good conscience followed this line of authority. I also believe, however, that the U.S. Supreme Court's recent *MOAC* decision[12] now invalidates the reasoning of those cases.

*MOAC* held that § 363(m) is not a jurisdictional provision.[13] In doing so, it focused on the plain language of § 363(m): or, as succinctly stated by Justice Jackson: "Start with the text."[14] *MOAC* went on to hold that, in comparing various jurisdictional provisions of the Bankruptcy Code to § 363(m), nothing in § 363(m)'s plain language or statutory context suggests that Congress intended § 363(m) to function as a jurisdictional limitation on appellate courts. Rather, § 363(m)'s "important directives" are not jurisdictional.[15] As such, courts may apply doctrines of waiver, forfeiture, and other similar doctrines, when evaluating statutory mootness under § 363(m).[16] Said the Court:

---

[11]*Rodriguez*, 258 F.3d at 759 (objecting party did not preserve good faith argument when it was not raised until appeal); *Griffin*, 310 B.R. at 137 (although sale order not directly on appeal, no evidence was presented nor had appellant even raised an argument that the sale was not in good faith); *Burgess*, 246 B.R. at 356 (appellant did not allege any misconduct by purchaser nor did any evidence of misconduct appear in the record on appeal).

[12]*MOAC Mall Holdings, LLC. v. Transform Holdco, LLC*, 143 S. Ct. 927 (2023).

[13]*Id.* at 935.

[14]*Id.* at 937.

[15]*Id.* at 938.

[16]*Id.* at 932.

Section 363(m) is what matters, and Congress has not clearly stated that the provision is a limit on judicial powers, rather than a mere restriction on the efforts of a valid exercise of that power when a party successfully appeals *a **covered*** authorization.[17]

(emphasis added).

More importantly for our purposes, the Supreme Court unanimously rejected the purchaser's argument that § 363(m) must be jurisdictional because it " 'confirms' a traditional truth that bankruptcy courts exercising *in rem* jurisdiction cannot touch a res that is transferred out of the estate."[18] "But that sits uncomfortably with § 363(m)'s express contemplation that courts *can* touch – and affect the validity of – certain sales or leases (e.g., those made to bad-faith purchasers) due to reversals or modifications of covered authorizations even though the property concerned has left the estate."[19] The Supreme Court therefore rejected the purchaser's argument that because the sale was complete, "no legal vehicle remains available for undoing the [sale] transfer."[20] Instead, rejecting an argument that the appeal must be moot because the sale had been consummated, the Court said, "Here, as elsewhere, we decline to act as a court of 'first view,' plumbing the Code's complex depths in 'the first instance' to assure ourselves that [the purchaser] is correct in its contention that no relief remains legally available."[21]

So, what does *MOAC* mean for this appeal and most significantly, the pending motion of the Trustee to dismiss the appeal as moot under § 363(m)?

---

[17]*Id*. at 939.

[18]*Id*.

[19]*Id*.

[20]*Id*. at 936.

[21]*Id*. at 936.

First, *MOAC* reinforces that we must carefully parse § 363(m)'s language, much as the Eighth Circuit already did in *Humphrey*.[22] A per se or "flat rule"[23] that validates any unstayed sale, regardless of whether the purchaser is one in good faith, contradicts the plain language of § 363(m) as interpreted by the Supreme Court in *MOAC*.

Second, the plain language of § 363(m) requires, for that section to apply, that the "entity [have] purchased or leased such property in good faith." Nothing in § 363(m) creates a presumption that all purchasers – in the absence of a challenge – are deemed to be purchasers in good faith; Congress knows how to create presumptions of good faith when it wants to.[24]

Third, for the same reason, a party – like the Trustee here – who chooses not to present evidence of the good faith of the purchaser may be deemed to have waived or forfeited the right to rely upon § 363(m)'s limited safe harbor provision on appeal. Neither the Trustee's sale motion nor the asset purchase agreement required a

---

[22]Other Eighth Circuit cases also wrestled with § 363(m)'s "applicability," rather than presuming it always applied: *e.g., AFY*, 734 F.3d at 817 ("On its face § 363(m) appears to apply"); *Wintz*, 219 F.3d at 811 (rejecting appellant's argument that § 363(m) did not apply).

[23]*See, e.g.*, *Stanford*, 17 F.4th at 123.

[24]*Compare* 11 U.S.C. § 362(C)(4)(d) (individual bankruptcy case filed after two or more dismissals in the previous year presumptively deemed to have been filed in bad faith). *See also In re M Capital Corp.*, 290 B.R. 743, 749, fn. 5 (9th Cir. B.A.P. 2003) ("Nothing in section 363(m) operates to create a rebuttable presumption of good faith.").

finding that the purchaser be found in good faith as a condition of the sale.[25] The bankruptcy court's sale order did not so find. Other than the bankruptcy court's brief comment that the Trustee's actions were in good faith, there is nothing in the evidentiary record whatsoever regarding the purchaser's good faith. The burden should be on the Trustee – not the party opposing the sale – to show evidence of the purchaser's good faith, if the Trustee desires to invoke § 363(m)'s safe harbor.[26] The Eighth Circuit has said that whether a purchaser acted in good faith is primarily a factual determination,[27] subject to clearly erroneous review.[28]

Finally, as many appellate courts have noted, it is the province of the trial court – not the appellate court – to make factual findings regarding good faith.[29] By

---

[25]Unlike the Third Circuit, the Eighth Circuit has never mandated that a bankruptcy court must make a finding of good or bad faith as a precondition to approving a § 363 sale. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3rd Cir. 1986) ("In short, we hold that when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser").

[26]*See M Capital Corp.*, 290 B.R. at 748.

[27]*U.S. v. Asset Based Resource Group*, LLC, 612 at 1019.

[28]*Polaroid Corp.,* 611 at 440.

[29]*E.g., Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 786 (9th Cir. B.A.P. 2002) ("an appellate court is ill-equipped to take evidence and make findings on such a fact-intensive question as good faith").

presuming that the purchaser acted in good faith, in the absence of such a finding by the bankruptcy court, are we not inappropriately making such a finding?[30]

For all these reasons, I would deny the Trustee's motion to dismiss the appeal since he moves solely under § 363(m), which I do not believe he has the right to rely on under the circumstances of this case. In other words, I believe the Trustee, in the words of the Supreme Court, has waived the right to rely on § 363(m), such that I cannot conclude that the appeal is statutorily moot. But that leads to the next question: is the appeal Constitutionally moot? Following the Supreme Court's logic in *MOAC*, I again do not believe so.

First, merely because the Trustee completed the sale of an undivided one-half interest in Riffenburg's homestead, such that the Debtor Vanessa Roper's undivided one-half interest has left her bankruptcy estate, does not mean that the appeal is moot. In the words of the Supreme Court, "[a] 'case' becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."[31] The Supreme Court in *MOAC* specifically rejected the purchasing party's argument that the sale was moot because the property interests had left the estate and expressly stated that the Supreme Court's cases "disfavor" these kinds of mootness arguments. Why does not Riffenburg still have a concrete interest in the outcome of this litigation?

---

[30]I note that some appellate courts have found cause to remand to the bankruptcy court to make factual findings when good faith is raised on appeal. *E.g., In re Whiting*, 325 B.R. 339 (9th Cir. B.A.P. 2002). Those cases tend to be those, however, where there the purchaser is unknown until the sale (such as an auction) occurs, such that evidence of bad faith may not emerge until after the sale. *Id*. at 785. Since the Trustee here chose not to auction Riffenburg's undivided one-half interest and instead identified the purchaser in his sale motion, and therefore in my view waived the right to rely on the purchaser as a good faith purchaser, I see no reason to remand for such findings.

[31]*MOAC,* 143 S. Ct. at 295.

Blue Sun Capital purchased a one-half undivided interest in Riffenburg's homestead. Blue Sun Capital will need to bring a partition action under applicable Arkansas law to determine what its interest may be, according to the authorities cited in Riffenburg's brief. There is no showing in the record on appeal that Blue Sun Capital has yet done so. Rather, the record shows that the Trustee holds and has not yet distributed the purchase money from the sale. This is not a case in which, for example, the purchaser has foreclosed and sold the property to a bona fide good faith purchaser, in which this Court would be bound by previous Eighth Circuit decisions to say that no effective relief could be granted and the appeal is moot.[32] The Trustee could, in the event the appeal is successful, be ordered to vacate his Trustee's deed and return Blue Sun Capital's $40,000, which has not yet been distributed to creditors. Given that, based on our record, Riffenburg still has a "concrete interest," in the litigation, I cannot find – much like the Supreme Court in *MOAC* – that the appeal is Constitutionally moot, merely because the Trustee recorded a deed to Blue Sun Capital.

Based upon this unusual record, I would therefore deny the Trustee's motion to dismiss the appeal under § 363(m) and allow the appeal to be heard on the merits; nothing in this dissent being deemed dispositive of whether the appeal is Constitutionally moot. I would also grant Riffenburg's motion for stay pending appeal. I believe that Riffenburg has shown a likelihood of success on the merits, given that there is a likelihood that the sale of Vanessa Roper's undivided one-half interest in the real estate she owned bare title to at the time she filed bankruptcy did not benefit her bankruptcy estate, and that Riffenburg has preliminarily met his

---

[32]*E.g.*, *U.S. v. Asset Based Resource Group*, LLC, 612 F.3d at 1017; *Jackson*, 663 B.R. at 738.

burden of showing that she appears to have no unsecured creditors to benefit from the sale of that interest.[33]

        For all these reasons, I must dissent.

_____

---

[33]*See* 11 U.S.C. § 302(a) (separate estates created by the filing of spouses); *e.g, In re Portell*, 577 B.R. 161 (Bankr. W.D. Mo. 2016) (discussing when substantive consolidation of spouse's separate estates may occur). Since benefit to the estate is one of the many factors bankruptcy courts should consider in approving a sale of those estate's assets (*e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997)), I believe the bankruptcy court should have, at least preliminarily, considered whether Vanessa Roper had any unsecured creditors in her estate who would benefit from the sale. It is apparent from the record that the bankruptcy court believed Riffenburg had a claim against his former spouse Vanessa Roper for breach of the divorce decree for failing to cooperate in deeding her interest to Riffenburg and their daughter before she filed bankruptcy, even though Riffenburg had elected not to file a proof of claim. Selling Riffenburg's homestead over his objection – either to pay Mr. Roper's creditors or to in turn return money to Riffenburg on a claim he elected not to make – raises, in my mind, a substantial public interest issue that also argues for issuing a stay pending appeal.